UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TAMMY LYNN B.,

        Plaintiff,

  -v-                                            5:18-CV-548

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OLINSKY LAW GROUP<br>Attorneys for Plaintiff<br>300 S. State Street, Suite 420<br>Syracuse, NY 13202 | HOWARD D. OLINSKY, ESQ. |
| OFFICE OF REGIONAL GENERAL COUNSEL<br>  SOCIAL SECURITY ADMINISTRATION<br>  REGION II<br>Attorneys for Defendant<br>26 Federal Plaza, Room 3904<br>New York, NY 10019 | PETER W. JEWETT, ESQ.<br>Special Ass't United States Attorney |

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

    Plaintiff Tammy Lynn B.[1] ("Tammy" or "plaintiff") brings this action seeking review of

defendant Commissioner of Social Security's ("Commissioner" or "defendant") final decision

---

[1] In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be used in this opinion.

denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Both parties have filed their briefs, and defendant has filed the Administrative Record on Appeal. The motions will be considered on the basis of these submissions without oral argument.[2]

## II. BACKGROUND

On February 25, 2015, Tammy filed applications for SSI and DIB alleging that injuries to her back, her right shoulder, and her left foot rendered her disabled beginning on February 21, 2014. R. at 63-78.[3] Plaintiff's consolidated claim was initially denied on May 13, 2015. *Id*.

At Tammy's request, a hearing was held before Administrative Law Judge ("ALJ") Jeremy G. Eldred on April 5, 2017.[4] R. at 31-50. Plaintiff, represented by non-attorney Terry Schmidt, appeared and testified. *Id.* The ALJ also heard testimony from Vocational Expert ("VE") Robert Baker. *Id*.

Thereafter, the ALJ issued a written decision denying Tammy's application for benefits through May 4, 2017, the date of his written decision. R. at 15-22. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. *Id*. at 1-3.

---

[2] Pursuant to General Order No. 18, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

[3] Citations to "R." refer to the Administrative Record. Dkt. No. 9.

[4] The hearing date was adjourned so Tammy could obtain representation. *See* R. at 51-59.

## III. **DISCUSSION**

### A. **Standard of Review**

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. *See Williams*, 859 F.2d at 258. Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone v.*

*Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### B. <u>Disability Determination—The Five-Step Evaluation Process</u>

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits. *Id*. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of

impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d); *see also id.* Pt. 404, Subpt. P, App. 1. If the claimant's impairment or combination of impairments meets one or more of the Listings, then the claimant is "presumptively disabled." *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to these first four steps is on the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five. *Perez*, 77 F.3d at 46. This step requires the ALJ to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. *Perez*, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2).

"[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual

functional capacity." *Poupore*, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

## C. ALJ's Decision

Applying the five-step disability determination, the ALJ found that: (1) Tammy had not engaged in substantial gainful activity since February 21, 2014, the alleged onset date; (2) plaintiff's degenerative disc disease of the cervical and lumbar spine, right shoulder strain, and hallux valgus[5] of the left foot were severe impairments within the meaning of the Regulations; and (3) these impairments, whether considered individually or in combination, did not meet or equal any of the Listings. R. at 17-18.

At step four, the ALJ determined that Tammy's impairments caused certain exertional limitations. R. at 18-20. In particular, the ALJ found that plaintiff retained the RFC to:

> perform sedentary work . . . . However, she is unable to reach overhead with her dominant upper extremity, can turn her head from side-to-side no more than occasionally, and is unable to operate heavy equipment or machinery.

*Id*. at 18.

The ALJ determined that these limitations precluded Tammy from performing her past relevant work as a convenience store clerk and as a cleaner/housekeeper. R. at 20. However, the ALJ found that plaintiff's RFC, considered together with her age and limited education, still allowed her to perform jobs such as "charge account clerk," "document preparer, microfilming," and "call-out operator." *Id*. at 21.

Because these jobs fit in with Tammy's assessed limitations and were present in sufficient numbers in the national economy, the ALJ concluded plaintiff was not disabled during the relevant time period. R. at 21-22. Accordingly, the ALJ denied plaintiff's

---

[5] This is a deformity of the big toe, often called a "bunion."

application for benefits. *Id*.

### D. **Tammy's Appeal**

Tammy contends the ALJ error at step four by "fail[ing] to create a logical bridge between the evidence of the record and the RFC determination." Pl.'s Mem. at 14.[6] First, plaintiff argues the ALJ incorrectly evaluated the medical evidence. According to plaintiff, the ALJ failed to satisfactorily discuss the treatment notes and other opinion evidence. Second and relatedly, plaintiff claims the ALJ failed to properly evaluate her credibility.

Where, as here, the ALJ finds at step two that a claimant has one or more "severe" impairments but determines at step three that the claimant is not presumptively disabled, the ALJ must go on to make an RFC finding, which is an assessment of "what an individual can still do despite his or her limitations." *Cox v. Astrue*, 993 F. Supp. 2d 169, 183 (N.D.N.Y. 2012) (McAvoy, J.) (adopting Report & Recommendation of Bianchini, M.J.) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)).

"In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and symptomatology], including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Adams v. Colvin*, 2016 WL 3566859, at *3 (N.D.N.Y. June 24, 2016) (quoting *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (Mordue, J.)).

"The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." *Rivera v. Comm'r of*

---

[6] Pagination corresponds to CM/ECF.

*Soc. Sec.*, 368 F. Supp. 3d 626 (S.D.N.Y. 2019) (citations omitted).

"In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." *Adams*, 2016 WL 3566859, at *3 (quoting *Casey v. Comm'r of Soc. Sec.*, 2015 WL 5512602, at *10 (N.D.N.Y. Sept. 15, 2015) (Suddaby, J.)).

### a. The Medical Evidence

Tammy faults the ALJ for being insufficiently detailed in his discussion of the medical evidence. For example, plaintiff argues that the ALJ failed to explain how he could have determined plaintiff had "severe" impairments even though the medical opinion evidence on which he relied often assessed "no limitations." Pl.'s Mem. at 16. Plaintiff also argues that the opinions of the various treating providers in the record do not "fully account for the limitations that the ALJ used in his RFC determination." *Id*. at 17.

Broadly speaking, the Regulations divide evidence from a claimant's medical sources into three categories: (1) treating; (2) acceptable; and (3) other.[7] The most important of these is the treating source category, which includes a claimant's "own physician, psychologist, or other acceptable medical source" who has provided "medical treatment or evaluation and who has, or has had an ongoing treatment relationship" with the claimant. *Martin v. Colvin*, 2016 WL 1383507, at *5 (N.D.N.Y. Apr. 7, 2016) (citation omitted).

---

[7] On January 18, 2017, the Social Security Administration made revisions to the rules regarding the evaluation of medical evidence. Because plaintiff's claim was filed before March 27, 2017, the prior policies govern here. *See, e.g.*, *Daniels on behalf of D.M.G. v. Comm'r of Soc. Sec.*, 2018 WL 5019746, at *6 n.13 (S.D.N.Y. Sept. 30, 2018) (explaining the elimination of the treating physician rule and related changes); *Perez v. Comm'r of Soc. Sec.*, 2019 WL 359980, at *6-*7 nn. 6-8 (E.D.N.Y. Jan. 29, 2019) (explaining various changes effective to claims filed after March 27, 2017).

The opinion of a treating source regarding the nature and severity of a claimant's impairments is entitled to *controlling* weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Martin*, 2016 WL 1383507, at *5 (quoting *Cobbins v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 126, 134 (N.D.N.Y. 2012)).

However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Martin*, 2016 WL 1383507, at *5 (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)). And when a treating source's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts, an ALJ may afford it less than controlling weight. *Id*. (citation omitted). In fact, a treating physician's opinion may also be properly discounted, or even entirely rejected, when: (1) it is internally inconsistent; (2) the source lacks underlying expertise; (3) the opinion is brief, conclusory, or unsupported by clinical findings; or even where (4) it "appears overly sympathetic such that objective impartiality is doubtful and goal-oriented advocacy reasonably is suspected." *Id*. (citation omitted).

Where an ALJ decides to afford a treating source's opinion less than controlling weight, he must still consider various factors in determining how much weight, if any, to give the opinion, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in claimant's particular case. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Beyond this so-called "treating physician rule," the same six factors set forth above apply with equal force to the evaluation of the remaining categories of medical evidence recognized by the Regulations: the "acceptable" and "other" sources mentioned earlier. *Martin*, 2016 WL 1383507, at *5. The former, those deemed "acceptable" sources, include "licensed physicians (medical or osteopathic doctors, psychologists, optometrists, podiatrists, and speech-language pathologists." *Id*. (citation omitted). The latter category, deemed "other" in Administration parlance, are "ancillary providers such as nurse practitioners, physician assistants, licensed clinical social workers, and therapists." *Id*.

Importantly, only evidence from a "treating" or "acceptable" source can be relied upon to establish the *existence* of a medically determinable impairment. *Martin*, 2016 WL 1383507, at *5 (citation omitted). However, evidence from all three sources "can be considered when determining severity of impairments and how they affect individuals' ability to function." *Id*.

Finally, while the six-factor analysis set forth above applies in all cases except where "controlling" weight is given to a treating physician's opinion, an ALJ need not mechanically recite these factors as long as the record reflects a proper application of the substance of the rule. *See, e.g.*, *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (summary order) (noting that an ALJ need not expressly recite each factor so long as it is "clear from the record as a whole that the ALJ properly considered" them).

Upon review, Tammy's arguments about the ALJ's consideration of the medical evidence are rejected. As an initial matter, at least one of plaintiff's arguments appears to conflate the ALJ's step two finding of "severe" impairments with his step four determination of her RFC—step two only serves to screen out *de minimis* medical conditions while step four

assesses what, if any, functional limitations arise from the combined effects of *all* the claimant's impairment(s), not just those that survived step two. *See, e.g.*, *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order) ("A RFC determination must account for limitations imposed by both severe and nonsevere impairment.").

More importantly, though, Tammy is wrong to claim error simply because the ALJ's final RFC finding does not precisely track an assessment provided by any one medical opinion in the record. After all, "there is no requirement that the ALJ pick one RFC and use that particular evaluation in its entirety." *Kitka v. Comm'r of Soc. Sec.*, 2016 WL 825258, at *9 (N.D.N.Y. Feb. 9, 2016) (Report & Recommendation) (Baxter, M.J.), *adopted by* 2016 WL 865301 (N.D.N.Y. 2, 2016).

Rather, "it is the ALJ's responsibility to 'choose between properly submitted medical opinions and other competent evidence to piece together an overall [RFC] assessment.'" *Robles v. Colvin*, 2016 WL 814926, at *4 (N.D.N.Y. Feb. 29, 2016) (quoting *Crofoot v. Comm'r of Soc. Sec.*, 2013 WL 5493550, at *8 (N.D.N.Y. 2013)).

To be specific, Tammy complains that the ALJ assessed certain functional limitations even though two of the medical source statements on which he relied indicated she had either minimal ones or even none at all. For instance, an August 17, 2015 treatment note and an April 2016 medical source statement completed by Jerod Hines, M.D., plaintiff's treating orthopedic specialist, both indicate plaintiff suffered from no functional limitations at all. R. at 19 (citing R. at 558-63). And a May 2015 opinion rendered by Elke Lorensen, M.D., a consultative examiner, indicated only "mild" limitations in a few areas and "moderate" ones in "bending, lifting, and reaching." R. at 19 (citing R. at 519).

There is nothing improper about an ALJ considering medical opinion evidence that

assesses, say, few or no exertional limitations and then relying in part on the combined force of other record evidence, such as a claimant's subjective testimony, to nevertheless choose to assign certain limitations that result in a *more* restrictive RFC finding. *See, e.g.*, *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

That is clearly what the ALJ did in this case. As the ALJ noted, Tammy testified that she "has difficulty lifting, standing, walking, sitting, climbing stairs, kneeling, bending, squatting, reaching overhead with her right arm, and moving her head from side-to-side." R. at 18. However, as the ALJ also discussed, the various medical opinions in the record, including those of her treating orthopedist and her treating podiatrist, assessed mostly normal functionality with little or no limitations in these areas. *Id*. at 19-20.

Nevertheless, the ALJ chose to incorporate certain limitations assessed by Rina Davis, M.D., one of Tammy's former treating providers. *Id*. at 20. And the ALJ also included a limitation in plaintiff's ability to move her neck from side-to-side based on the strength of her testimony, not by resorting to a provider's medical opinion. *Id*. Plaintiff's disagreement with the ultimate factual determinations that the ALJ drew from this record evidence is not a basis for remand. Accordingly, this argument will be rejected.

### b. Subjective Testimony

Tammy also argues the ALJ improperly assessed the credibility of her testimony regarding her subjective, day-to-day experience of pain and other symptoms.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective

medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Adams*, 2016 WL 3566859, at *7 (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).

"Where the record evidence does not fully support a claimant's testimony, the ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms." *Adams*, 2016 WL 3566859, at *7 (citations omitted). "First, the ALJ must determine whether, based on the objective medical evidence, a claimant's medical impairments could reasonably be expected to produce the pain or other symptoms alleged." *Id*. "Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work." *Id*.

"At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. *Adams*, 2016 WL 3566859, at *7 (citations omitted).

"As before, an ALJ's '[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record

in arriving at his determination.'" *Adams*, 2016 WL 3566859, at *8 (quoting *Camille v. Colvin*, 104 F. Supp. 3d 329, 345 (W.D.N.Y. 2015).

"In other words, an ALJ 'must discuss the relationship between the plaintiff's medically determinable impairment, the plaintiff's reported symptoms, his conclusions regarding the plaintiff's functioning, and why the plaintiff's reported symptoms are or are not consistent with the evidence in the record.'" *Adams*, 2016 WL 3566859, at *8 (quoting *Deeley v. Astrue*, 2011 WL 454505, at *5 (N.D.N.Y. Feb. 3, 2011) (Scullin, J.)).

Upon review, this argument is also rejected. To be sure, the ALJ could have said more about how and why he chose not to fully credit Tammy's testimony. But plaintiff goes too far to claim that the ALJ's discussion amounts to only "one short paragraph." Pl.'s Mem. at 19.

Rather, a review of the ALJ's written decision shows that the ALJ's credibility assessment is bound up in his review of the medical evidence. For instance, the ALJ candidly acknowledged that Tammy testified to being severely physically limited in nearly all physical areas, to being unable to sit for longer than 10-15 minutes, to stand for too long, or to walk very far. R. at 18-19. The ALJ also acknowledged plaintiff's claim that the subjective experience of pain emanating from these limitations caused her difficulty concentrating.

However, the ALJ then juxtaposed these claims of severity with the repeated, mostly normal findings by the various medical providers in the record. R. at 19-20. For instance, Dr. Lorensen noted that plaintiff reported being able to shower and dress herself and that she enjoyed fishing as a hobby. *Id*. at 19. The ALJ also noted Dr. Lorensen's observations that plaintiff did not need an assistive device or any help getting on or off the exam table, and could "rise from a chair without difficulty." *Id*.

These mostly normal findings, of course, would tend to undermine a claimant's testimonial assertion that performing any of those feats amounts to a painfully difficult, if not painfully impossible, task. *See, e.g.*, *Alexandrea R. R. v. Berryhill*, 2019 WL 2269854, at *9 (N.D.N.Y. May 28, 2019) ("The ALJ is often looking to see whether a claimant's testimony during the benefits hearing is in line with statements they have made to their own treatment providers at some point in the past.").

Further, Dr. Hines, Tammy's own treating orthopedist, indicated that she could "resume all activities of daily living" and a later noted that plaintiff "has no functional limitations" in those areas. R. at 19. The same goes for plaintiff's own treating podiatrist, who indicated that plaintiff "has no limitations for lifting, carrying, standing, or walking" following her recovery from foot surgery. *Id*. at 20.

In light of this discussion, the ALJ properly rejected Tammy's assertions of concentration problems. R. at 20. Among other things, the ALJ noted that plaintiff's treatment records reflect normal cognitive functioning, and that records from her primary care provider "note no functional limitations with respect to her daily living." *Id*. In fact, the ALJ noted that treatment records found elsewhere indicated that plaintiff even attempted to "fix the brakes on her car" in April of 2015. *Id*.

Of course, none of these things, considered individually, provide a sufficient basis on which to reject a claimant's testimony of severe limitations and disabling pain. But considered together, they tend to cast doubt on the notion that Tammy is as severely limited as she claimed to be in her testimony. And where, as here, a claimed inability to concentrate results from the alleged severity of those limitations, an antecedent factual determination by the ALJ that those limitations are not as severe as plaintiff claims would tend to support a

- 15 -

conditional factual conclusion that the claimed inability to concentrate is not as severe as plaintiff claims, either.

In sum, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Pollino v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 428, 439 (W.D.N.Y. 2019) (citation omitted). This kind of deference to the ALJ makes sense. As the only participant in the disability appellate process who has the "opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," the ALJ is "best-positioned to make accurate credibility determinations." *Id*. Accordingly, this argument will be rejected.

## IV. **CONCLUSION**

The ALJ applied the appropriate legal standards and supported his written decision with substantial evidence in the record.

Therefore, it is

ORDERED that

1. Tammy's motion for judgment on the pleading is DENIED;

2. The Commissioner's motion for judgment on the pleadings is GRANTED;

3. The Commissioner's decision is AFFIRMED; and

4. Tammy's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated: June 17, 2019
      Utica, New York.